UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

GARY A. MASON,

        Plaintiff,              Case No. 1:12-cv-1303

v.                                           Honorable Robert J. Jonker

RICHARD McKEON,

        Defendant.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Gary A. Mason presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility. He sues MDOC Director Richard McKeon.

Plaintiff's statement of the claim consists of one paragraph (verbatim):

> I've been denied inmate to inmate correspondence I have no gang affiliation history or any escape history . . . The Director of Mich. Dept. of Correction issued the order too not permitt [sic] this type of correspondence.

(Compl., docket #1, Page ID#3.) As a remedy, he seeks injunctive relief:

> I want the court to issue a court order to permitt me the inmate to inmate correspondence.

(*Id.*, Page ID#4.)

**Discussion**

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

While he does not state the constitutional basis for his claim, Plaintiff appears to allege that he is being deprived of his First Amendment right to freedom of association and speech by Defendant's adoption of MDOC Director's Office Memorandum (DOM) 2013-7, which governs prisoner-to-prisoner mail. The memorandum, which supersedes DOM 2012 and substantially continues a policy in existence since 2009, prohibits most prisoner-to-prisoner correspondence. The memorandum includes exceptions for prisoners who were charged for the same offense if either has a pending challenge to his conviction, co-plaintiffs in civil rights actions, and co-defendants in a

child-custody case involving the termination of parental rights. The policy also allows communication with verified immediate family members or verified close surrogates of immediate family members.

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). However, rights inconsistent with proper incarceration are not retained. *See Overton v. Bazzetta*, 539 U.S. 126, 131 (2003); *see also Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977); *Shaw v. Murphy*, 532 U.S. 223, 229 (2001). As the Supreme Court repeatedly has recognized, freedom of association and assembly are among the rights least compatible with incarceration. *See Bazzetta*, 539 U.S. at 131 (citing *Jones*, 433 U.S. at 125-26, and *Hewitt v. Helms*, 459 U.S. 460 (1983)). Curtailment of those freedoms "must be expected in the prison context." *Id.*

To the extent that prisoners retain any rights to associate with other prisoners, a question the Supreme Court has never definitively answered, prison officials may impinge on those rights if the regulation "is reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987), *cited in Bazzetta*, 539 U.S. at 132; *see also Beard v. Banks*, 548 U.S. 521, 528-29 (2006). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are

ready alternatives available that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests. *Turner*, 482 U.S. at 89-90. As continually emphasized by the Supreme Court, the problems of prison administration are peculiarly for resolution by prison authorities and their resolution should be accorded deference by the courts. *See Bazzetta*, 539 U.S. at 132; *Shaw*, 532 U.S. at 230; *Washingon v. Harper*, 494 U.S. 210, 224 (1990); *Turner*, 482 U.S. at 84-96; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *Jones*, 433 U.S. at 125-126; *Pell*, 417 U.S. at 826-27. These concerns are even stronger when a state penal institution is involved. *Glover v. Johnson*, 138 F.3d 229, 241 (6th Cir. 1998). Moreover, when a prisoner seeks to overturn a prison regulation, the burden is on the prisoner to disprove the validity of the prison restriction. *Bazzetta*, 539 U.S. at 132.

Plaintiff has not and cannot meet his burden under the *Turner* standard, as the Supreme Court itself has previously rejected his claim. In *Turner*, the Supreme Court squarely upheld a state's total ban on prisoner-to-prisoner correspondence, concluding that a prohibition on correspondence between prisoners was clearly and logically connected to legitimate prison security concerns and otherwise met the demands of the four-factor test. *Turner*, 482 U.S. at 91-92; *see also Bazzetta*, 539 U.S. at 134 (quoting *Turner*). In light of the Supreme Court's decision in *Turner*, Plaintiff fails to state a valid First-Amendment claim.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  March 6, 2013         /s/ Robert J. Jonker
                              ROBERT J. JONKER
                              UNITED STATES DISTRICT JUDGE